UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
PERFORMING ARTS CENTER OF
SUFFOLK COUNTY (D/B/A THE
GATEWAY), ANNMARIE ALLAN,
JEFF BELLANTE, SCOT ALLAN, and
MICHAEL BAKER,

                                        **REPORT AND**
                                        **RECOMMENDATION**
                    Plaintiffs,          CV 20–2531 (JS)(AYS)

        -against-

ACTOR'S EQUITY ASSOCIATION,
EQUITY LEAGUE PENSION TRUST
FUND, EQUITY LEAGUE HEALTH
TRUST FUND, EQUITY LEAGUE 401(K)
PLAN, BOARD OF TRUSTEES OF THE
EQUITY LEAGUE PENSION TRUST
FUND, BOARD OF TRUSTEES OF THE
EQUITY LEAGUE HEALTH TRUST
FUND; and the BOARD OF TRUSTEES
OF THE EQUITY LEAGUE 401(K) PLAN,

                    Defendants.
--------------------------------------------------X
**SHIELDS, Magistrate Judge,**

        Plaintiffs Performing Arts Center of Suffolk County (d/b/a The Gateway) ("Gateway"),

Annmarie Allan, Jeff Bellante, Scot Allan, and Michael Baker (the "Individual Plaintiffs"),

commenced this action against Actors' Equity Association (the "Union" or "Equity"), and Equity

League Pension Trust Fund ("Pension Fund"), Equity League Health Trust Fund ("Health

Fund"), Equity League 401(k) Trust Fund ("401(k) Fund") (the "Funds"), as well as the Board of

Trustees of the Equity League Health Trust Fund Wells Fargo Bank, and the Board of Trustees

of the equity League 401(k) Trust Fund (the "Trustees") (collectively the "Funds Defendants")

alleging that Defendants' termination of benefits violated numerous state and federal laws.

Presently before this Court, upon referral by the Honorable Joanna Seybert for Report and Recommendation, see Electronic Order dated 04/08/2022, is the Equity's motion to dismiss the Complaint, see Docket Entry ("DE") [30], and the Funds' Defendants' motion to partially dismiss the Complaint. See DE [31]. As discussed below, this Court respectfully recommends that Equity's motion to dismiss be granted and that the Funds' Defendants' motion be granted in part and denied in part.

## BACKGROUND

I.    Documents Considered

As is required in the context of this motion to dismiss, the factual allegations in the Complaint, though disputed by Defendants, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of the Plaintiff.

While facts to consider in the context of a Rule 12 motion to dismiss are generally limited to those set forth in the pleadings, a court may consider matters outside of the pleadings under certain circumstances. Specifically, in the context of a Rule 12(b)(6) motion, a court may consider: (1) documents attached to the Complaint as exhibits or incorporated by reference therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effects of which the Complaint "relies heavily" and which are, thus, rendered "integral" to the Complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002); see Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). Moreover. "[a] court may take judicial notice of documents filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006)

(quoting Int'l Star Class Yacht Racing Ass'n Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)).

The Court turns now to discuss the facts set forth in Plaintiffs' Complaint, construed in their favor.

II.     Facts

 A.     Background

 1.     The Parties

Defendant Equity is a national labor union that represents more than 51,000 actors and stage managers that perform in live theater. Complaint ("Compl.") ¶ 1, DE [1]. Plaintiff Gateway is a Long Island theater company. Compl. ¶¶ 12, 27-28. Plaintiffs Annmarie Allan, Jeff Bellante, Scot Allan, and Michael Baker are employees of Gateway and members of the Union. Compl. ¶¶ 13-16. The Funds are multi-employer plans that receive contributions from various employers pursuant to those employers' collective bargaining agreements with Equity. Compl. ¶¶ 18-21. The Trustees are the named fiduciaries, Plan Administrators, and Plan Sponsors of the Funds. Compl. ¶ 22.

 2.     The Collective bargaining Agreements and Individual Employment Agreements

Through Letters of Agreement ("LOAs") executed by gateway on April 20, 2015, Compl. ¶ 30, and July 24, 2018, id., Gateway agreed to be bound by Equity's Agreement and Rules Governing Employment in Non-Resident Dramatic Stock ("C.O.S.T. Contract"). Compl. ¶ 30; Ex. 1 (collectively the "CBA").

Pursuant to the CBA, Gateway is required to make weekly contributions to the Pension and Welfare Fund on behalf of its employees who are covered under the CBA, at a rate of 8% of all gross weekly salary earned per week per employee. Compl. ¶ 31: Ex. 2, 3. Gateway is also

3

required to make a weekly contribution to the Welfare Fund that ranged from $173 per week per employee in 2015 to $177 per week per employee in 2018. Id. ¶ 32; Ex. 2, 3.

Union members must pay a $1,700 initiation fee, $174 in annual dues, and 2.5% of their gross earnings while performing work covered under the CBA. Compl. ¶ 25. In exchange the Union negotiates with employers on behalf of its members for among other things, higher wages and benefits. Compl. ¶ 26.

The CBA covers employees who are engaged in work as "Actors" as defined under the CBA. Compl. ¶ 36. Section 20(A) of the CBA and Section 7 of the LOAs define "Actor" broadly to include persons who are signed to the Equity Contracts, including principals, stage managers, assistant stage managers, understudies, professional theater interns, supplemental extras, and extras. Id.; Ex. 1-3. Prior to engaging in any performance, Gateway enters into individual employment contracts with each Actor called "Equity Contracts" that detail the terms of employment, including rate of pay, production schedules, and position.  Compl. ¶ 35. Gateway files a copy of the Equity Contract with the Union. Compl. ¶ 38.

Both LOAs contain an arbitration clause requiring that: "[a]ny controversy arising from the application or interpretation of this Agreement or affecting the relationship between any Actor or Equity and the Producer, including disputes as to the existence or validity of any employment contract, shall be submitted to arbitration[.]" Compl.; Ex. 2 at § 1; Ex. 3 at § 1. The LOAs also provide that arbitration is the "exclusive remedy for the resolution and adjustment of disputes[.]" Compl. Ex. 2 at § 1(A); Ex. 3 at § 1(A).

3.    Termination of Benefits

Plaintiffs contend that since 1995 to present, Equity has represented to them that "on-call" or "standby" understudies or assistant stage managers are covered by the CBA. Compl. ¶¶

40, 57. In particular, Plaintiffs allege that in 1995 Gateway hired Jerry Lapidus ("Lapidus"), a former Equity employee, to work as a manager for Gateway. Compl. ¶ 42. Although Lapidus was hired for administrative work, he was assigned an Equity Contract as an on-call or standby assistant stage manager on various productions. Compl. ¶¶ 44-45. In or about 2013, Matthew Conti ("Conti"), the Equity business representative for Gateway at the time, told Gateway's Artistic Director, Paul Allen, that on-call/standby assistant stage managers to production were covered under the CBA. Compl. ¶ 52. In June 2014, Conti also told Paul Allen that on-call or standby understudies were also covered by the CBA. Compl. ¶ 54.

From 1995 through late 2018 and early 2019, Equity and the Funds accepted contributions and dues from actors engaged in on-call or seasonal roles. Compl. ¶¶ 56, 61. At no time were Gateway or any of its employees, including the Individual Plaintiffs, informed that on-call or standby roles were not covered by the CBA. Compl. ¶ 57. Therefore, Gateway continued to make contributions to Equity and to the Funds on behalf of the Individual Plaintiffs because of the understanding that the Individual Plaintiffs were engaged in covered work under the CBA and thus were entitled to pension, health, and 401(k) benefits from the Funds. Compl. ¶¶ 59, 63-66.

In late 2018 and early 2019, the Funds terminated the Individual Plaintiffs' benefits due to the determination that the Individual Plaintiffs had not performed work covered under the CBA. Compl. ¶¶ 67-69, 73. Specifically, on November 28, 2018, the Funds notified Annmarie Allan that it would terminate her pension, health and 401(k) benefits. Compl. ¶ 68. On March 6, 2019, the Funds notified Scot Allan, Michael Baker, and Jeff Bellante that it would no longer accept contributions on their behalf. Compl. ¶ 68. The Funds also terminated Scot Allan's and

5

Michael Baker's health benefits and removed certain pension credits from each of the Individual Plaintiffs. Id.

The Individual Plaintiffs appealed the Funds' determinations on or before May 3, 2019. Compl. ¶ 70. On July 29, 2019, the Funds notified Gateway and the Individual Plaintiffs of the Funds' decision to deny their appeals. Compl. ¶ 71. On December 20, 2019, the Funds issued their final determination regarding Gateway and the Individual Plaintiffs. Compl. ¶ 72. The Funds rejected most of the Individual Plaintiffs' appeals and determined that the Individual Plaintiffs were not entitled to certain pension, health, and 401(k) benefits and demanded the repayment of over $200,000 in medical costs paid because the Individual Plaintiffs were not Covered Employees. Id. The Funds determined that when the Individual Plaintiffs were employed as understudies and/or assistant stage managers, they were not engaged in covered in employment. Compl. ¶ 73.

B.    Procedural History

Plaintiffs commenced this action on June 5, 2020.  See generally Compl. On August 11, 2020, both Equity and the Funds Defendants requested a pre-motion conference in anticipation of filing motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See DE [20], [21]. On August 18, 2020, the Court granted Defendants' requests for a pre-motion conference. See DE [24]. The pre- motion conference was held on September 10, 2020, and Defendants were granted leave to move to dismiss and a briefing scheduled was set. See DE [28]. On October 26, 2020, Equity filed a motion to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) for failure to state a claim. See DE [30]. On October 26, 2020, the Funds Defendants also filed their partial motion to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) for failure to state a claim. See DE [31].

6

III.    <u>The Motions to Dismiss</u>

Equity moves to dismiss all claims, while the Funds seek partial dismissal of the Complaint.

A.    <u>Equity's Motion to Dismiss</u>

With respect to Equity, the Individual Plaintiffs assert a claim for breach of the federal duty of fair representation (Eighth Cause of Action) as well as three state law tort claims for fraud (Sixth Cause of Action), negligent misrepresentation (Seventh Cause of Action) and unjust enrichment (Eleventh Cause of Action). Gateway asserts two state law claims, fraud (Ninth Cause of Action) and unjust enrichment (Eleventh Cause of Action).

Equity argues that the all the state law tort claims (whether asserted by the Individual Plaintiffs or Gateway) should be dismissed under the doctrine established in <u>Martin v. Curran</u>, 303 N.Y. 276 (1951), that to assert a cognizable state law tort claim against a union, a plaintiff must allege that each and every member of the union authorized or ratified the conduct at issue. Equity contends that Plaintiffs have not alleged such.

Equity argues that the state law claims should also be dismissed because Section 301 of the Labor Management relations Act, 29 U.S.C. § 185, preempts them. Section 301 preempts any state law claim that requires interpretation of, or is inextricably intertwines with, a collective bargaining agreement. Equity contends that, here, interpretation of the CBA is necessary because Plaintiffs allege that Equity misrepresented whether certain positions were covered by the terms of the CBA. Equity argues the CBA analysis is necessary to determine whether the positions were covered in order to determine whether there could have been a misrepresentation.

Equity asserts that the Individual Plaintiffs' state law tort claims are also preempted by Equity's federal statutory duty of fair representation ("DFR"). The DFR preempts state law

claims that impose obligations on the union already imposed by the DFR, which prohibits arbitrary and bad faith actions in the negotiation and administration of collective bargaining agreements. The Individual Plaintiffs allege that Equity had a duty "to exercise reasonable care and competence" in communication benefit information to the Individual Plaintiffs and negligently led them to believe their positions would be covered. Compl. ¶¶ 147-148. Equity contends that this claim is indistinguishable from the state law tort claims which are based on the identical allegations, and therefore, preempted by the DFR.

Finally, Equity argues that the duty of fair representation claim is time-barred by the DFR's six month statute of limitations as the Individual Plaintiffs knew or should have known of Equity's alleged breach on July 29, 2019, when the Funds rendered their "final and binding" determination concerning whether the Individual Plaintiffs' positions were covered under the CBA.

      B.    <u>The Funds Defendants' Partial Motion to Dismiss</u>

With respect to the Funds Defendants, the Complaint alleges eight causes of action against some or all of the Funds Defendants under various provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, <u>et</u> <u>seq.</u>, and common law.

The Funds Defendants argue that dismissal of the Second Cause of Action for breach of fiduciary duty under 404(a), 29 U.S.C. § 1104(a), in its entirety is warranted because the Individual Plaintiffs fail to allege facts that the Trustees failed to exercise reasonable care in communicating about benefits.

The Funds Defendants similarly argue that dismissal of the Third and Fourth Causes of Action, in which the Individual Plaintiffs allege that the Trustees violated ERISA Sections

105(a)(1)(A)(i) and 105(a)(1)(B), 29 U.S.C, § 1025(a)(1)(A)(i) and (a)(1)(B), is warranted because the Complaint is devoid of allegations that the Trustees failed to provide benefit statements in accordance with 29 U.S.C. § 1025(a)(1)(A)(i) and (B).

The Funds Defendants assert that the Fifth Cause of Action, in which the Individual Plaintiffs allege breach of fiduciary duty against the Trustees under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), should be dismissed to the extent that the Individual Plaintiffs seek to "estop the Boards of Trustees . . .  and the Funds . . . from collecting from Gateway" claims paid by the Health Fund on behalf of the Individual Plaintiffs. See Compl. ¶ 132. The Funds Defendants contend that the Individual Plaintiffs lack standing to seek an injunction on behalf of Gateway.

The Funds Defendants assert that the Ninth Cause of Action in which Gateway alleges fraud against the Funds Defendants should be dismissed because Gateway fails to (1) plead fraud with the particularity required by Fed. R. Civ. P. 9(b), and (2) set forth non-conclusory factual allegations of fraudulent conduct. The Funds Defendants also contend that ERISA preempts the fraud claim.

The Funds Defendants argue that Gateway lacks standing to bring its Tenth Cause of Action, a request for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, "reversing the Funds' denial of pension, health and 401(k) benefits from the Individual Plaintiffs." Compl. ¶ 165(a). The Funds Defendants assert that Gateway lacks standing to bring its claim for declaratory judgment regarding the denial of benefits with regard to the Individual Plaintiffs.

Finally, the Funds Defendants argue that Plaintiffs' Eleventh Cause of Action alleging unjust enrichment against all Defendants, should be dismissed because (1) it's duplicative of its

fraud claim; (2) it is preempted by ERISA; and (3) Plaintiffs fail to allege facts that support such a claim.

The Court now turns to the merits of the motions.

## DISCUSSION

I.    Legal Principles: Standards Applicable on Motions to Dismiss

A.    Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119–20 (2d Cir. 2010). Facial plausibility is established by pleading sufficient factual content to allow a court to reasonably infer the defendant's liability. Twombly, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 555. Nor is a pleading that offers nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," sufficient. Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 555).

With these standards in mind, the Court turns to assess the viability of Plaintiffs' claims.

II.    Failure to State a Claim

A.    Equity's Motion to Dismiss

1.    State Law Tort Claims

Equity seeks complete dismissal of the Individual Plaintiffs' state law tort claims for: (1) fraud (Sixth Cause of Action) and (2) negligent misrepresentation (Seventh Cause of Action), as

well as Gateway's fraud claim (Ninth Cause of Action), and all the Plaintiffs' unjust enrichment

claim (Eleventh Cause of Action).

    a.    The Martin v. Curran Doctrine

"The *Martin* rule 'bars all actions against an unincorporated voluntary membership

association, and bars claims against the officers of such an association in their representative

capacities where there is no allegation that the members of the association authorized or ratified

the wrongful conduct complained of.'" Bidnick v. Grand Lodge of Free & Accepted Masons of

State of New York, 72 N.Y.S.3d 547, 549-50 (N.Y. App. Div. 2d Dep't 2018). Despite being

rejected by federal courts and many other states, the Martin rule continues to be the law of New

York State. See Bidnick, 72 N.Y.S.3d at 549-50 (applying the Martin rule in a defamation action

against the defendant unincorporated association); Cablevision Sys. Corp. v. Commc'ns Workers

of Am. Dist. 1, 16 N.Y.S.3d 828, 829 (N.Y. App. Div. 2d Dep't 2015) (finding Martin barred

claims against the union defendant and defendants in their representative capacities); Palladino v.

CNY Centro, Inc., 23 N.Y.3d 140, 148-51 (N.Y. 2014) (noting that Martin has been questioned,

but declining to overrule it). Therefore, because the Court must apply New York law to the

relevant state law claims against Equity, the Martin rule is the law that this Court must apply.

As an initial matter, the parties disagree as to whether Equity is an unincorporated

association. Under New York law, "[a] voluntary, unincorporated membership association is

neither a partnership nor a corporation. It is not an artificial person, and has no existence

independent of its members." Martin, 303 N.Y. at 280. Similarly, "[a]t common law, an

unincorporated association is not an entity, and has no status distinct from the persons

composing it, but is, rather, a body of individuals acting together for the prosecution of a

common enterprise without a corporate charter but upon methods and forms used by corporations." <u>Sokolow v. Palestine Liberation Org.</u>, 60 F. Supp. 3d 509, 524 (S.D.N.Y. 2014).

In the complaint, Plaintiffs do not allege that Equity is a corporate entity, registered partnership, or other kind of recognized legal entity under the law of New York or any other state; rather, they allege only that it is "a national labor union" "representing over 51,000 member actors and stage managers" and "is a party to the CBA." Compl. ¶¶ 1, 17. Equity's official name does not include any signifier such as "Inc." or "Corp." as would be required for a corporation under New York law. <u>See</u> N.Y. Bus. Corp. L. § 301(a)(1) ("[T]he name of a domestic or foreign corporation: ... [s]hall contain the word 'corporation', 'incorporated' or 'limited', or an abbreviation of one of such words; or, in the case of a foreign corporation, it shall, for use in this state, add at the end of its name one of such words or abbreviation thereof."); <u>accord</u>, <u>Adson5th, Inc. v. Bluefin Media, Inc.</u>, 16-CV-0143, 2017 WL 2984552, at *7 n.10 (W.D.N.Y. July 13, 2017).

Plaintiff appears to rely entirely on the fact that Equity has not provided any direct evidence or documentation specifically stating that Equity is a voluntary unincorporated association. However, the relevant circumstantial evidence before the Court provides sufficient reason to find that Equity is not a corporate entity and that its existence is based on pursuing a common goal of its members. Further, Plaintiffs have failed to allege otherwise. Plaintiffs' pleading is devoid of any allegation that Equity is not an unincorporated entity and therefore immune to the <u>Martin</u> holding. The Court therefore finds that there is sufficient basis to find that Equity is a voluntary association and employ the <u>Martin</u> doctrine in the instant action.

Additionally, although this fact is not determinative, a plethora of other courts have indicated that various unions (both international and local branches) are unincorporated

associations. Again, although these cases alone are not determinative because they are merely persuasive authority and the Court must rely on the specific facts of this case, they reinforce the Court's determination by showing that labor unions are, by and large, unincorporated associations by nature of their purpose.

The Court finds that Plaintiffs' state law tort claims against Equity are defective in light of the continued viability of the <u>Martin</u> rule. Plaintiffs have failed to plead that each Union member authorized or ratified the Equity's conduct. <u>See generally</u>, Compl.

However, Plaintiffs correctly argue that <u>Martin</u> does not apply to the Individual Plaintiffs' negligent misrepresentation claim. <u>See</u> <u>Piniewski v. Panepinto</u>, 267 A.D.2d 1087, 701 N.Y.S.2d 215, 216 (4th Dep't 1999) (holding that the <u>Martin</u> rule did not apply to a negligence claim related to a business manager's alleged negligence in appointing, hiring, or retaining the defendant as a labor steward). To hold otherwise would require membership authorization or even ratification of a tort, which is, "in effect, to attempt to transmute a negligent act into a willful wrong." <u>See</u> <u>Torres v. Lacey</u>, 3 A.D.2d 998, 163 N.Y.S.2d 451, 451 (1st Dep't 1957).

Accordingly, with the exception of the Individual Plaintiffs' seventh cause of action for negligent misrepresentation, Equity's motion to dismiss the state law tort claims is granted.

      b.    <u>LMRA Section 301 Preempts the State Law Claims</u>

Even treating Plaintiffs' state law tort claims of falling outside the scope of the <u>Martin</u> rule, Equity argues those claims should still be dismissed because Plaintiffs' state law claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA").

"Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims that are 'substantially dependent on analysis of a collective-

bargaining agreement.'" <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 394, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987). Section 301 of the LMRA provides, in pertinent part:

> Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

The Supreme Court has held that the doctrine of "complete pre-emption" applies "primarily in cases raising claims pre-empted by § 301 of the LMRA." <u>Caterpillar</u>, 482 U.S. at 393, 107 S. Ct. 2425. Under this doctrine, "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" <u>Id.</u> (quoting <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 65, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987)).

The Supreme Court has articulated the principle of Section 301 preemption as follows: "if the resolution of a state-law claim depends upon the meaning of a [CBA], the application of state law ... is pre-empted and federal labor-law principles ... must be employed to resolve the dispute." <u>Lingle v. Norge Div. of Magic Chef, Inc.</u>, 486 U.S. 399, 405–06, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988). Put another way, state law claims arising out of allegations of breach of contract or tort liability are preempted by Section 301 if they are "inextricably intertwined with consideration of the terms of [a] labor contract." <u>Wall v. Const. & General Laborers' Union, Local 230</u>, 224 F.3d 168, 178 (2d Cir. 2000). "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or [be] dismissed as pre-empted by federal labor-contract law." <u>Vera v. Saks & Co.</u>, 335 F.3d 109, 114 (2d Cir. 2003) ("<u>Vera I</u>")

(quoting Allis–Chalmers Corp. v. Lueck, 471 U.S. 202, 211, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985)).

However, the Supreme Court has cautioned that state law claims involving mere consultation of a CBA, rather than interpretation of a CBA, do not lead to Section 301 preemption. Livadas v. Bradshaw, 512 U.S. 107, 124, 114 S. Ct. 2068, 129 L. Ed. 2d 93 (1994). Thus, actions to enforce state law rules or obligations that are independent of a CBA would not be preempted by Section 301. Vera I, 335 F.3d at 115. "Nor would a state claim be preempted if its application required mere referral to the CBA for 'information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.'" Id. (quoting Lingle, 486 U.S. at 413 n. 12, 108 S. Ct. 1877). Ultimately, it is "the legal character of a claim, as independent of rights created under the [CBA], that decides whether a state cause of action may go forward." Livadas, 512 U.S. at 123–24, 114 S. Ct. 2068 (citations and quotation marks omitted).

"To determine whether § 301 preemption applies, the court begins with consideration of the elements of plaintiff's stated claim" and then "considers whether adjudication of any element of that claim requires interpretation of the parties' CBA." Olivieri v.Waldbaum, Inc., No. 12 Civ. 1195(SLT)(MDG), 2013 WL 5507141, at *6 (E.D.N.Y. Sept. 30, 2013) (citing Foy v. Pratt & Whitney Grp., 127 F.3d 229, 233 (2d Cir. 1997)). Plaintiffs' Sixth, Seventh, and Ninth Causes of Action each allege that Equity's misrepresentation or omissions were "necessary" for Plaintiffs to "evaluate [their] coverage under the CBA," Compl. ¶¶ 134, 140, 155, and an element of both a fraud and a negligent misrepresentation claim is an actual misrepresentation or omission of fact. Compl., ¶¶ 135, 142, 156. In order to determine whether a misrepresentation or omission of fact was made, the Court must interpret the terms of the CBA. This case turns on whether Plaintiffs'

positions at Gateway were covered under the term "Actor" as defined in the CBA, and whether they engaged in covered employment. Thus, it is first necessary for the Court to analyze the terms of the CBA to determine whether the terms of the CBA cover Plaintiffs' positions before the Court can determine whether a misrepresentation or omission of fact was made. Therefore, such interpretation renders the state law claims subject to Section 301 preemption.

      c.    <u>The Duty of Fair Representation Preempts the Individual Plaintiffs' State Law Claims</u>

Assuming arguendo that the Individual Plaintiffs' state law claims are not subject to the Martin rule nor preempted by Section 301, they are preempted by the duty of fair representation.

Pursuant to the National Labor Relations Act ("NLRA"), a union owes its members a "duty fairly to represent all [members] in its collective bargaining ... and in its enforcement of the resulting collective bargaining agreement." <u>Vaca v. Sipes</u>, 386 U.S. 171, 177 (1967); <u>see also</u> <u>id.</u> ("The statutory duty of fair representation was developed ... in a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act, and was soon extended to unions certified under the N.L.R.A." (internal citations omitted)). This duty of fair representation ("DFR") imposes on the union an "obligation to serve the interests of all [union] members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." <u>Id.</u> A union breaches the duty of fair representation where its actions toward a member are "arbitrary, discriminatory, or in bad faith." <u>Id.</u> at 190.

A state law claim is subsumed by the duty of fair representation—and thus preempted—if it imposes an obligation on the union already imposed by the duty of fair representation. <u>See</u>, <u>e.g.</u>, <u>Goodman v. Port Auth. of N.Y. & N.J.</u>, 2011 WL 3423800, at *8 (S.D.N.Y. Aug. 4, 2011); <u>see also</u> <u>Agosto v. Corr. Officers Benev. Ass'n</u>, 107 F. Supp. 2d 294, 310 (S.D.N.Y.

2000) ("State law claims are preempted if they arise out of or are encompassed by a breach of the duty of fair representation."). A state law claim is not preempted by the duty of fair representation "if it arise[s] wholly outside the ambit of those obligations circumscribed by a union's duty of fair representation under the collective bargaining agreement." Morillo v. Grand Hyatt New York, 2014 WL 3498663, at *4 (S.D.N.Y. July 10, 2014) (internal quotation marks omitted).

Individual Plaintiffs allege Equity "negligently and carelessly led the Individual Plaintiffs to believe that their roles as on call or standby understudies or assistant stage managers were covered by the CBA…" "Equity's acts therefore violate § 301 of the national Labor Relations Act in that its conduct was arbitrary, discriminatory and/or in bad faith. Compl. ¶¶ 148, 150.

The duty of fair representation imposes an obligation to act in good faith. Vaca v. Sipes, 386 U.S. at 177, 87 S. Ct. 903. The Individual Plaintiffs' breach of fiduciary duty claim is subsumed by the duty because the alleged acts here (that Equity misrepresented certain terms of the CBA to Plaintiffs, namely Equity's representation of the Individual Plaintiffs with respect to their terms of employment under the CBA), if ultimately proven, would violate this already-existing duty. Spellacy v. Airline Pilots Ass'n–Int'l, 156 F.3d 120, 126 (2d Cir. 1998) ("A union acts in bad faith when it acts with an improper intent, purpose or motive."); see also Oliva v. Wine, Liquor & Distillery Workers Union, Local One, 651 F. Supp. 369, 371 (S.D.N.Y. 1987) (claim based on allegations of union's "bad faith representations" and resultant breach of fiduciary duty simply a "recharacterization[ ]" of federal duty of fair representation claim) (citing Vaca v. Sipes, 386 U.S. at 177, 87 S. Ct. 903).

Because the Individual Plaintiffs' state law tort claims impose no duties Equity does not already owe under the federal duty of fair representation, they are subsumed and, thus, completely preempted.

### 2.   The Federal Claim

The Individual Plaintiffs' Eighth Cause of Action alleges that Equity breached its duty of fair representation.

#### a.   The Duty of Fair Representation (Eighth Cause of Action) is Time-Barred

An employee's claim against a union for breaching its duty of fair representation (a "DFR claim") is a cause of action "implied under the scheme" of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151–169. DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 & n. 14, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983). It is undisputed that the limitations period for filing such a claim in the district court is borrowed from section 10(b) of the NLRA, 29 U.S.C. § 160(b), which provides for a six-month limitations period. DelCostello, 462 U.S. at 169, 103 S. Ct. 2281; see also Demchik v. Gen. Motors Corp., 821 F.2d 102, 105 (2d Cir. 1987).

The primary question here is when the Individual Plaintiffs' DFR claim accrued. "In this circuit, it is well settled that the cause of action accrues no later than the time when plaintiffs knew or reasonably should have known that such a breach of the duty of fair representation had occurred, even if some possibility of nonjudicial enforcement remained." Cohen v. Flushing Hosp. & Med. Ctr., 68 F.3d 64, 67 (2d Cir. 1995) (internal quotation marks and alterations omitted).

The Individual Plaintiffs argue that their DFR claim is timely because the appeal denial letters issued by the Funds on July 29, 2019 ("the July letters") (Declaration of Olivia R. Singer ("Singer Declaration"), Exs, A-D, DE [30-2]) were not actually final, because the Funds issued a

later letter on December 20, 2019 (the "December letter") to Paul Allen, Gateway's artistic director, detailing the amounts owed to the Funds and explaining the reasons for the balance. Declaration of Mohammad Shihabi, Esq. ("Shihabi Decl."), Ex. 1, DE [40-1].

The December letter did not modify or alter in any way the Funds' determination that on call or standby understudies or assistant stage managers were not covered by the CBA and LOAs. The December letter which was issued to Gateway and not the Individual Plaintiffs, made no substantive changes to the July 2019 determinations. The December letter, which was in response to Gateway's "objections" and request for a refund, only explained the grounds for dismissal already outlined in the July letters issued to the Individual Plaintiffs. The December letter noted that the Individual Plaintiffs had directly appealed to the Funds, that the Funds had already contacted the Individual Plaintiffs, and that "the Trustees determined that 'season understudy' is not a bona fide classification under" the CBA. See Shihabi Decl., Ex. 1. The December letter goes on to refer to documents exchanged between Plaintiffs and the Funds since July 29, 2019, to assist the Funds in determining the exact number of weeks some of the Individual Plaintiffs engaged in covered employment. Id. The December letter had no effect on the Funds' decision rendered in July that such work was not covered by the CBA.

In Kalyanaram v. Am. Ass'n of Univ. Professors at the N.Y. Inst. Of Tech., the Second Circuit found that an arbitrator's issuance of subsequent supplemental wards did not serve to extend the statute of limitations because the "subsequent awards . . . did not fundamentally alter or modify the Final Award, but rather supplemented it in ways that were consistent with the final resolution of the dispute." Kalyanaram, 742 F.3d 42, 45 (2d Cir. 2014). In the instant case, as in Kalyanaram, the subsequent December letter had no effect on the Funds' prior July determinations. See Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of

Am. (UPGWA) & Its Local 537, 47 F.3d 14, 16 (2d Cir. 1995) (per curiam) ("[R]eservation of jurisdiction over a detail like overseeing the precise amount of back pay owed does not affect the finality of an arbitrator's award.").

Plaintiffs try to distinguish Kalyanaram's holding, arguing that the case involved an arbitration rather than a benefit appeal. This distinction is of no import. Kalyanaram holds that supplemental decisions do not impact an already final decision. Kalyanaram, 742 F.3d at 45. Therefore, because the Individual Plaintiffs had notice that the Funds' decision regarding covered employment was final and binding on July 29, 2019, and the supplementary correspondence did not affect its decision regarding whether work as an on-call or standby assistant stage manager or understudy constituted covered work under the CBA, Plaintiffs knew or should have known on July 29, 2019 that Equity's decision allegedly violated its duty of fair representation. The Individual Plaintiffs' DFR claim, therefore, accrued when the July letters issued. Accordingly, Equity's motion to dismiss the Eighth Cause of Action as time-barred is granted.

    B.    The Funds Defendants' Motion to Dismiss

    1.    Breach of Fiduciary Duty (Second Cause of Action)

To state a claim for breach of fiduciary duty under ERISA, at minimum the Complaint must allege 1) that defendant was a fiduciary who, 2) was acting within his capacity as a fiduciary, and 3) breached his fiduciary duty. See ERISA § 409, 29 U.S.C. § 1109; In re AOL Time Warner, Inc. Sec. and "ERISA" Litig., No. 02–CV–8853, 2005 WL 563166, at *3 (S.D.N.Y. Mar. 10, 2005).

ERISA requires every employee benefit plan to provide for one or more named fiduciaries who possess the "authority to control and manage the operation and administration of

the Plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1). The individual named as the "administrator" in the plan instrument is automatically a named fiduciary, and in the absence of such a designation, the "sponsor" of the plan is considered the administrator of the plan and thereby the named fiduciary. ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

In addition to named fiduciaries, ERISA also defines fiduciaries "in *functional* terms of control and authority over the plan." Mertens v. Hewitt Assocs., 508 U.S. 248, 262, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993) (emphasis in original). The statute provides that any individual is a fiduciary to the extent that he or she "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets," or "has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

Although this definition of a fiduciary is "to be broadly construed," LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir.1997) (internal quotation marks omitted),

> [t]he 'threshold question' in an action charging breach of a fiduciary duty under ERISA 'is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to complaint.'

In re WorldCom, Inc., 263 F. Supp. 2d 745, 757 (S.D.N.Y.2003) (citing Pegram v. Herdrich, 530 U.S. 211, 226, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000)). ERISA assigns fiduciaries "a number of detailed duties and responsibilities, which include the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." Mertens, 508 U.S. at 252–53, 113 S. Ct. 2063 (internal quotation and citation and quotation marks omitted). Once again, these obligations are statutorily determined:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104(a)(1); see Mertens, 508 U.S. at 251, 113 S. Ct. 2063 (describing ERISA as a "comprehensive and reticulated statute"). Section 409(a), 29 U.S.C. § 1109(a), makes fiduciaries liable for breach of these duties.

　　　a.　　　The Individual Plaintiffs Sufficiently Pled Count II

The Individual Plaintiffs have stated a plausible second cause of action alleging that the Funds Defendants breached their fiduciary duty by intentionally misrepresenting and failing to communicate to the Individual Plaintiffs about their entitlement to benefits, or, did so negligently.

This Circuit has borrowed from securities law to formulate the materiality standard applicable to claims of fiduciary breach under ERISA based on misrepresentations. Ballone v. Eastman Kodak Co., 109 F.3d 117, 124 (2d Cir.1997). "[M]isrepresentations are material if they would induce a reasonable person to rely upon them." Id. at 122. Determining the materiality of misstatements is a fact-specific inquiry. Id. at 125.

Courts have held that fiduciaries have a duty to be honest in any communications that they make to participants in a fiduciary capacity, and "an affirmative duty to inform when the [fiduciary] knows that silence might be harmful." Adams v. Freedom Forge Corp., 204 F.3d 475, 492 (3d Cir. 2000) (defendants allegedly induced plan participants to retire early with oral

22

assurances of lifetime benefits coverage) (internal quotation marks and citation omitted); see Varity v. Howe, 516 U.S. 489, 506, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996) ("[L]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in 29 U.S.C. 1104(a)(1)." (internal citations and quotation marks omitted)); Anweiler v. Am. Elec. Power Serv. Corp., 3 F.3d 986, 991 (7th Cir. 1993) (where defendants allegedly induced plaintiff's husband to designate disability insurer as beneficiary of group life policy, court held that fiduciaries must communicate material facts affecting the interests of beneficiaries); Broga v. Northeast Utils., 315 F. Supp. 2d 212, 244 (D. Conn. 2004) (holding that an affirmative disclosure obligation arises when the employer knows that its past statements are no longer correct).

Here, the Individual Plaintiffs allege that the Trustees continuously accepted contributions from Gateway for the Individual Plaintiffs, paid claims for health coverage for the Individual Plaintiffs, and provided the Individual Plaintiffs with benefit statements representing to them that they were Covered Employees over a long span of time. Compl. ¶¶ 31-32, 40, 61, 65. Plaintiffs have also alleged that nothing factually changed in the Individual Plaintiffs' employment with Gateway during this time period. Id. At this early stage of the litigation, Plaintiffs have adequately stated a claim. Through discovery Plaintiffs may discover evidence to flesh out their allegations. However, at this juncture, the claim survives.

The Individual Plaintiffs further allege that the Funds Defendants treatment of Lapidus demonstrated that the trustees intentionally or knowingly misrepresented the Individual Plaintiffs' benefits if they were not Covered Employees. Lapidus worked for the Union prior to joining Gateway. Compl. ¶ 42. Lapidus was employed by Gateway in an administrative role engaged as a standby assistant stage manager. Id. ¶ 47. The Individual Plaintiffs allege that the

Funds Defendants never revoked Lapidus' benefits while he worked for Gateway. Id. ¶¶ 49-50.

Nor have they demanded repayment of any health claims paid for by the Health Fund while

Lapidus worked for Gateway. Id.

At this early juncture, these allegations support an inference of intentional or knowing

misrepresentation, or a negligent material representation for a claim of breach of fiduciary duty.

Accordingly, The Funds Defendants' motion is denied with respect to the second cause of action.

    2.    <u>Failure to Provide Benefit Statements in Accordance with 29 U.S.C §
1025(a)(1)(A)(i) & (B) (Third and Fourth Causes of Action)</u>

Section 105(a) of ERISA, 29 U.S.C. § 1025(a), under which the Individual Plaintiffs

bring their claim against the Trustees of the 401(k) Fund in the Third Cause of Action, states that

a plan administrator is required to automatically "furnish a pension benefit statement" to plan

participants at intervals determined by the degree of control a participant has over his or her

account. 29 U.S.C. § 1025(a)(1)(A)(i)–(ii). Specifically, a statement must be furnished: "at least

once each calendar quarter" to participants who have "the right to direct the investment of assets

in [their] account under the plan." 29 U.S.C. § 1025(a)(1)(A)(i).

Section 105(a)(1)(B), under which the Individual Plaintiffs bring their Fourth Cause of

Action against the Trustees of Pension Fund, provides that:

> The administrator of a defined benefit plan . . . shall furnish a pension benefit
> statement--
> **(i)** at least once every 3 years to each participant with a nonforfeitable accrued
> benefit and who is employed by the employer maintaining the plan at the time the
> statement is to be furnished, and
> **(ii)** to a participant or beneficiary of the plan upon written request.
>
> Information furnished under clause (i) to a participant may be based on reasonable
> estimates determined under regulations prescribed by the Secretary, in
> consultation with the Pension Benefit Guaranty Corporation.

29 U.S.C. § 1025(a)(1)(B).

There is no dispute that Plaintiffs received their benefit statement. Rather, Individual Plaintiffs argue that the statements were inaccurate. Plaintiffs argue that 401(k) Fund and the Pension Fund provided written benefit statements that represented to them that they had accrued benefits in both Funds over a period of numerous years. Compl. ¶¶ 113-115. Plaintiffs contend that in the event the Individual Plaintiffs are held not to be Covered Employees, then those written benefit statements never should have been sent and were inaccurate.

The Funds Defendants argue that the disclaimer in the benefits statements defeats the Individual Plaintiffs' claims for penalties related to providing accurate statements. The Funds Defendants cite two separate cases, Perreca v.Gluck, 295 F.3d 215, 225-26 (2d Cir. 2002) (benefits statements with a disclaimer that the calculations therein are "projected benefits" subject to review, does not constitute a "promise" in the context of a promissory estoppel ERISA claims), and, Griffin v. N.Y. State Nurses Ass'n Pension Plan & Benefits Fund, 757 F. Supp. 2d, 217 n.24 (E.D.N.Y. 2010) (plaintiff would be unable to support claim of promissory estoppel as a matter of law because the estimated benefit statement contained a disclaimer), to support their argument.

At this early stage of the litigation, the Court rejects the Funds Defendants' arguments. First, both the Perreca and Griffin courts rejected the allegations when reviewing them in the context of claims for promissory estoppel under ERISA. Here, the Individual Plaintiffs claim violations of ERISA § 105, not claims for estoppel. Further, both cases were decided on summary judgment, not a motion to dismiss. Therefore, at this initial pleadings stage, the Individual Plaintiffs have alleged a plausible claim under ERISA § 105 to survive a motion to dismiss. Accordingly, dismissal of Counts III and IV is denied.

3.    Breach of Fiduciary Duty Against the Trustees under ERISA § 502(a)(3) (Fifth Cause of Action)

ERISA § 502(a)(3) provides that:

> [a] civil action may be brought ... (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan ....”

29 U.S.C. § 1132(a)(3).

A plan participant suing under ERISA must establish both statutory standing and constitutional standing, meaning the plan participant must identify a statutory endorsement of the action and assert a constitutionally sufficient injury arising from the breach of a statutorily imposed duty. See Cent. States Se. & Sw Areas Health and Welfare Fund v. Merck–Medco Managed Care, 433 F.3d 181, 199 (2d Cir. 2005).

“The prudential limitations on jurisdiction require that a plaintiff establish that he or she is the proper proponent of the rights asserted; a litigant may not raise the rights of a third-party, or assert speculative, conjectural or generalized grievances more appropriately resolved by a governmental body, other than the courts.” New York State Nat. Org. for Women v. Terry, 886 F.2d 1339, 1346–47 (2d Cir. 1989) (internal citations omitted).

Constitutional standing refers to the requirement that parties suing in federal court establish that a “Case” or “Controversy” exists within the meaning of Article III of the United States Constitution. Constitutional standing requires (1) that the plaintiff have suffered an “injury in fact”—that is, “an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical”; (2) that there is “a causal connection between the injury and the conduct” of which the plaintiff complains; and (3) that it is “likely ... that the injury will be redressed by a favorable decision.” Lujan v. Defenders

of Wildlife, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (internal citations and quotation marks omitted).

Unlike the "immutable requirements of Article III," the "prudential principles that bear on the question of standing" are "judicially self-imposed limits on the exercise of federal jurisdiction," and may be altered. Bennett v. Spear, 520 U.S. 154, 162, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997) (internal quotation marks omitted). They are "founded in concern about the proper—and properly limited—role of the courts in a democratic society." Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed.2 d 343 (1975). Prudential principles are "closely related to Art. III concerns but essentially matters of judicial self-governance." Id. at 500, 95 S. Ct. 2197. Unlike the requisites of constitutional standing, prudential limits "can be modified or abrogated by Congress." Bennett, 520 U.S. at 162, 117 S. Ct. 1154. One prudential limit on standing is the principle "that when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant [the] exercise of jurisdiction." Warth, 422 U.S. at 499, 95 S. Ct. 2197. Another prudential principle is that a plaintiff may ordinarily assert only his own legal rights, not those of third parties. Id.; see also Singleton v. Wulff, 428 U.S. 106, 113, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976); see also Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 358 (2d Cir. 2016) (holding that psychiatrists lacked standing to assert ERISA § 502(a)(3) claims "as third parties bringing suit on behalf of their patients.").

Lastly, a plaintiff must have a cause of action under the applicable statute. This is a question of whether the particular plaintiff "has a cause of action under the statute." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 127, 134 S. Ct. 1377, 1387, 188 L. Ed. 2d 392 (2014). This inquiry "does not belong" to the family of standing

inquiries, id., because "the absence of a valid ... cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional *power* to adjudicate the case." Id. at 128 n. 4 (emphasis in original) (internal quotation marks omitted); see also Nw. Airlines, Inc. v. County of Kent, 510 U.S. 355, 365, 114 S.Ct. 855, 127 L.Ed.2d 183 (1994) ("The question whether a federal statute creates a claim for relief is not jurisdictional.").

The Funds Defendants seek partial dismissal of the Fifth Cause of Action, in which the Individual Plaintiffs allege breach of fiduciary duty against the Trustees under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to the extent that the Individual Plaintiffs seek to "estop the Board of Trustees . . . and the Funds . . . from collecting from Gateway" claims paid by the Health Fund on behalf of Individual Plaintiffs. See Compl. ¶ 32. The Funds Defendants argue that the Individual Plaintiffs lack standing to seek an injunction on behalf of Gateway. The Court agrees.

The Individual Plaintiffs lack both constitutional and prudential standing to seek an injunction on behalf of Gateway. ERISA § 502(a)(2) limits who can bring a civil suit to only a "participant, beneficiary, or fiduciary…." Gateway, a theater company, clearly does not fall into any of these three categories. The Individual Plaintiffs cannot request as part of their equitable relief under ERISA § 502(a)(3) that in the event the Trustees are held to have breached their fiduciary duty to the Individual Plaintiffs, their employer, Gateway, should not be required to pay for health claims on their behalf that the Health Fund has already paid. Such a claim circumvents ERISA's express standing requirements. If successful, Gateway, a party who is not a participant, beneficiary, or fiduciary of the plan, would be the sole beneficiary, not the Individual Plaintiffs. As such, partial dismissal of the Fifth Cause of Action is warranted. Accordingly, the Funds Defendants motion to partially dismiss the Fifth Cause of Action, to the

extent that the Individual Plaintiffs seek to estop the Funds Defendants from collecting from Gateway is granted.

> 4.      Fraud (Ninth Cause of Action)

Gateway asserts a cause of action for fraud against all Defendants, including the Funds Defendants.

When reviewing a complaint for failure to plead fraud with particularity, plaintiff's allegations must be taken as true. See, e.g., Luce v. Edelstein, 802 F.2d 49, 52 (2d Cir. 1986). "The court must read the complaint generously and draw all inferences in favor of the pleader." Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).

Fed. R. Civ. P. 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Second Circuit has adopted a strictly enforced pleading requirement under Rule 9(b). See Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990). The purpose of the pleading requirement is to give notice to defendants, to eliminate complaints filed only for discovery purposes, and to protect defendants' reputations from frivolous lawsuits. See, e.g., Cosmas v. Hassett, 886 F.2d at 11.

An allegation of fraud must specify the time, place, speaker and content of the misrepresentation. See Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir. 1990); Cosmas v. Hassett, 886 F.2d at 11; Luce v. Edelstein, 802 F.2d at 54. Any claim of fraud based on information and belief must include a statement of facts on which the belief is founded. See Wexner v. First Manhattan Co., 902 F.2d at 172; DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1248 (2d Cir. 1987); Luce v. Edelstein, 802 F.2d at 54 n.1.

Generally, however, dates, times and places need not be pleaded with absolute precision, as long as enough information is disclosed to put the defendants on notice as to

the circumstances of the charged misrepresentations. Harris v. Wells, 757 F. Supp. 171, 174 (D.Conn. 1991); see Jubran v. Musikahn Corp., 673 F. Supp. 108, 112 (E.D.N.Y. 1987). "Plaintiff need not plead his evidence, so long as he gives defendants notice of what they are charged with." Ballan v. Wilfred American Educational Corp., 720 F. Supp. 241, 252 (E.D.N.Y. 1989) (citing Goldman v. Belden, 754 F.2d 1059, 1070 (2d Cir. 1985)). Also, while the circumstances of fraud must be pled specifically, scienter may be averred generally when the complaint sets forth facts that give rise to a strong inference of fraudulent intent. See Wexner v. First Manhattan Co., 902 F.2d at 172; Ouaknine v. MacFarlane, 897 F.2d at 80; Cosmas v. Hassett, 886 F.2d at 12–13.

Plaintiffs must connect the allegations of fraud to each individual defendant. See, e.g., Luce v. Edelstein, 802 F.2d at 54. "General allegations that defendants 'conspired' in the scheme do not sufficiently attribute responsibility for fraud to each individual defendant." Center Cadillac v. Bank Leumi Trust Co. of New York, 808 F. Supp. at 230 (citing Morin v. Trupin, 711 F. Supp. 97, 111 (S.D.N.Y. 1989)).

"[A] complaint must 'specify the time, place, speaker, and content of the alleged misrepresentations,' 'explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[s] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 359 (2d Cir. 2013) (quoting Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001)); see also Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006). The complaint must also "provide some minimal factual basis" that gives rise to a strong inference of fraudulent intent. Powers v. British Vita, P.L.C., 57 F.3d 176, 184 (2d Cir. 1995).

Gateway's fraud claim fails against the Funds Defendants. The complaint is devoid of any specific statements that are false or fraudulent made by the Funds Defendants. See Ouaknine, 897 F.2d at 79. Gateway fails to identify the time, place, speaker and content of the misrepresentation attributed to the Funds Defendants. See id. Rather, Gateway argues that the fraudulent misrepresentations were made by Conti, an Equity employee. See Plaintiffs' Memo. of Law in Opposition to the Funds Defendants' Partial Motion to Dismiss ("Pls. Opp."), at 15-16, DE [41]. However, Gateway fails to allege any facts that Conti's representations were made on behalf of, or bind, the Funds Defendants.

Gateway's pleading additionally falls short due to Gateway's undifferentiated pleading of fraud against multiple defendants. Gateway's allegations regarding "the misrepresentation and omissions of Actors Equity, the Board of Trustees of the Funds and the Funds themselves" (Compl. ¶ 159), and "knowing false material misrepresentations and/or omissions by Defendants" (Compl. ¶ 160), fail to satisfy Rule 9(b). See DiVittorio, 822 F.2d at 1249 (allegations of fraud were insufficient to where the complaint did not link the defendants to the alleged fraudulent statement); see also Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'").

Gateway states that "discovery is needed to determine what discussions Conti may have had with the Funds Defendants about the representations he made to Gateway, and what his representation to Gateway was based upon. As a result, Gateway has satisfied the particularity requirement necessary for fraud." Pls. Opp, at 16. Gateway's conclusion is inapposite to Rule 9(b)'s intent. Rule 9(b) will have failed in its purpose if conclusory generalizations such as these will permit a plaintiff to set off on a long and expensive discovery process in the hope of

uncovering some sort of wrongdoing. Accordingly, Gateway's fraud claim against the Funds

Defendants fails meet the heightened pleading requirements of Rule 9(b) Gateway fails to

attribute any fraudulent misrepresentations or omissions to the Funds Defendants and fails to link

any alleged fraudulent misrepresentations to them. As such, the motion seeking dismissal of

Ninth Cause of Action against the Funds Defendants is granted.

     5.    <u>Gateway's Claim for Declaratory Judgment (Tenth Cause of Action)</u>

Gateway seeks a declaration

> (a) reversing the Funds' denial of pension, health and 401(k) benefits from the
> Individual Plaintiffs, and (b) that the Funds, including but not limited to the
> Welfare Fund, cannot demand refund from Gateway of amounts paid by the
> Welfare Fund for claims made by the Individual Plaintiffs, including the
> $212,014.00 the Welfare Fund is demanding, or any other amounts paid.

Comp. ¶ 165.

The federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202 ("DJA"), gives a district

court the discretion to "declare the legal rights and other legal relations of any interested party

seeking such declaration." <u>Id.</u> § 2201(a). However, the DJA "is procedural only and does not

create an independent cause of action." <u>Chevron Corp. v. Naranjo</u>, 667 F.3d 232, 244 (2d Cir.

2012) (internal quotation marks and citations omitted). Thus, a "request for a declaratory

judgment is not a cause of action; it is a request for a remedy that does not exist independent of a

plausible underlying claim for relief." <u>Lisa Coppola, LLC v. Higbee</u>, No. 1:19-CV-678, 2020

WL 1154749, at *10 (W.D.N.Y. Mar. 10, 2020). Gateway's tenth cause of action is therefore

construed as a request for declaratory relief, not a separate cause of action.

     6.    <u>Unjust Enrichment (Eleventh Cause of Action)</u>

To state a claim for unjust enrichment under New York law, a plaintiff must plead facts

showing "that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good

conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 55 (2d Cir. 2011) (internal quotation marks omitted); see also Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 183, 919 N.Y.S.2d 465, 472, 944 N.E.2d 1104 (2011) (stating that conclusory allegations are insufficient).

"Unjust enrichment is not a catchall cause of action to be used when others fail .... An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (2012). Rather, it "is available *only* in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Id.

At the outset, for the reasons discussed supra in section II. (A)(1)(b), the Individual Plaintiffs' claim is preempted by ERISA. The Court is not persuaded by the Individual Plaintiffs' argument that their unjust enrichment claims "should not be preempted based on the fact that [they] have pled unjust enrichment in the alternative to their ERISA claims." Pls. Opp. at 22, DE [41]. "A state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA is preempted." Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 288 (2d Cir. 1992), abrogated on other grounds, Gerosa v. Savasta & Co., Inc., 329 F.3d 317 (2d Cir. 2003). Plaintiffs' theory of recovery under state law is the same one asserted in their ERISA claims. It seeks to "rectify an alleged wrongful denial of benefits promised under ERISA-regulated plans, and do[es] not attempt to remedy any violation of a legal duty independent of ERISA." Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 114 (2d Cir. 2008). Therefore, the Individual Plaintiffs' unjust enrichment claim is preempted.

At this early stage, Gateway's claim for unjust enrichment against the Funds Defendants survives, barely. Construing all inferences in favor of Gateway, at this procedural juncture, Gateway has alleged facts enough facts to state a plausible unjust enrichment claim against the Pension and Health Funds, but not the Trustees or the 401(k) Fund.

Specifically, Gateway asserts that the Pension and Health Funds have refused to refund the full amount of contributions it received. Compl. ¶¶ 64-65. In the absence of any privity between Gateway and the Funds, and in event that the Individual Plaintiffs are deemed to not be covered employees, then Gateway has stated a plausible claim for unjust enrichment against the Pension and Health Funds. However, the Complaint is devoid of any such allegations on behalf of Gateway as to the Trustees or the 401(k) Fund. Accordingly, Gateway's unjust enrichment claim against the Trustees and the 401(k) Fund is dismissed.

III.   Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] ... when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party[.]'" United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 28 (2d Cir. 2016) (second and third alterations in original) (citation omitted) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008)); see also Kainz v. Bernstein, 841 F. App'x 249, 253 (2d Cir. 2020) (noting that leave to amend should be freely given).

The Court respectfully recommends that Plaintiffs be granted leave to amend the Complaint to replead claims not preempted by ERISA nor time barred. See Woo Hee Cho v. Oquendo, No. 16-CV-4811, 2018 WL 9945701, at *12 (E.D.N.Y. Aug. 25, 2018) ("When a

motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."
(quoting Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999))); Caren v. Collins, 696 F.
App'x 19, 22 (2d Cir. 2017) ("[D]ismissals for insufficient pleadings are ordinarily with leave to
replead."); see also Cotiviti, Inc. v. Deagle, 501 F. Supp. 3d 243, 264 (S.D.N.Y. 2020) (sua
sponte granting leave to file a second amended complaint where the plaintiff could provide
missing facts necessary to support its claims).

<u>CONCLUSION</u>

For the foregoing reasons, this Court respectfully recommends that Equity's motion to
dismiss, found at docket entry No. 30 herein, be granted and the Funds Defendants' motion for
partial dismissal, found at docket entry No. 31 herein, be granted in part and denied in part.
Specifically, this Court recommends that: (1) the Funds Defendants' motion to dismiss the
Second Cause of Action be denied; (2) the Funds Defendants' motion to dismiss the Third and
Fourth Causes of Action be denied; (3) the Funds Defendants' motion to partially dismiss the
Fifth Cause of Action, to the extent that the Individual Plaintiffs seek to estop the Funds
Defendants from collecting from Gateway be granted; (4) the Ninth Cause of Action for fraud
alleged by Gateway be dismissed; (5) Gateway's Tenth Cause of Action be construed as a
request for declaratory relief, not a separate cause of action; (6) the Individual Plaintiffs' claim of
unjust enrichment be dismissed as preempted by ERISA; and (7) Gateway's unjust enrichment
claim against the Trustees and the 401(k) Fund be dismissed, but survive as against the Pension
and Health Funds.

The Court further respectfully recommends that Plaintiffs be granted leave to amend the
Complaint to replead claims not preempted by ERISA nor time barred.

<u>OBJECTIONS</u>

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. <u>Thomas v. Arn</u>, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").


Dated: Central Islip, New York
        August 25, 2022

                                               /s/ Anne Y. Shields
                                              Anne Y. Shields
                                              United States Magistrate Judge