UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
PERFORMING ARTS CENTER OF
SUFFOLK COUNTY (D/B/A THE
GATEWAY), ANNMARIE ALLAN,
JEFF BELLANTE, SCOT ALLAN, and
MICHAEL BAKER,

                                        **REPORT AND**
                                        **RECOMMENDATION**
                   Plaintiffs,       CV 20–2531 (JS)(AYS)

        -against-

ACTOR'S EQUITY ASSOCIATION,
EQUITY LEAGUE PENSION TRUST
FUND, EQUITY LEAGUE HEALTH
TRUST FUND, EQUITY LEAGUE 401(K)
PLAN, BOARD OF TRUSTEES OF THE
EQUITY LEAGUE PENSION TRUST
FUND, BOARD OF TRUSTEES OF THE
EQUITY LEAGUE HEALTH TRUST
FUND; and the BOARD OF TRUSTEES
OF THE EQUITY LEAGUE 401(K) PLAN,

                   Defendants.
--------------------------------------------------X
**SHIELDS, Magistrate Judge,**

      Plaintiffs Performing Arts Center of Suffolk County (d/b/a The Gateway) ("Gateway"),

Annmarie Allan, Jeff Bellante, Scot Allan, and Michael Baker (the "Individual Plaintiffs")

(collectively the "Plaintiffs"), commenced this action against Actors' Equity Association (the

"Union" or "Equity"), and Equity League Pension Trust Fund ("Pension Fund"), Equity League

Health Fund ("Health Fund"), Equity League 401(k) Trust Fund ("401(k) Fund") (the

"Funds"), as well as the Board of Trustees of the Equity League Health Trust Fund Wells Fargo

Bank, and the Board of Trustees of the Equity League 401(k) Trust Fund (the "Trustees")

(collectively the "Funds Defendants") alleging that Defendants' termination of benefits violated numerous state and federal laws.

Plaintiffs filed an Amended Complaint against all Defendants following the Court's granting of the Union's motion to dismiss the original Complaint and the Court's granting in part and denying in part of the Funds Defendants' partial motion to dismiss the original Complaint. (See Adoption Order Adopting Report and Recommendation, Docket Entry ("DE"), [50].)

Presently before this Court, upon referral by the Honorable Joanna Seybert for Report and Recommendation, (see Electronic Order dated 10/26/2023), is the Funds Defendants' motion to partially dismiss the Amended Complaint and motion to strike Plaintiffs' jury demand. (See DE [56].) As discussed below, this Court respectfully recommends that the Funds Defendants' motion be granted in part and denied in part. Specifically, the Court recommends that the motion be granted to the extent that Plaintiffs' Sixth Cause of Action for Fraud be dismissed, and denied without prejudice to renewal with respect to the motion to strike Plaintiffs' jury demand.

## BACKGROUND

I.    Documents Considered

As is required in the context of this motion to dismiss, the factual allegations in the Amended Complaint, though disputed by the Funds Defendants, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of the Plaintiffs.

While facts to consider in the context of a Rule 12 motion to dismiss are generally limited to those set forth in the pleadings, a court may consider matters outside of the pleadings under certain circumstances. Specifically, in the context of a Rule 12(b)(6) motion, a court may consider: (1) documents attached to the Complaint as exhibits or incorporated by reference

2

therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effects of which the Complaint "relies heavily" and which are, thus, rendered "integral" to the Complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002); see Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).  Moreover. "[a] court may take judicial notice of documents filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (quoting Int'l Star Class Yacht Racing Ass'n Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)).

The Court turns now to discuss the facts set forth in Plaintiffs' Amended Complaint, construed in their favor.

II.    Facts

A.    Background

As the referred motion is one for partial dismissal of the Amended Complaint, the Court limits this section solely to facts pertinent to the determination of that motion.

1.    The Parties

Defendant Equity is a national labor union that represents more than 51,000 actors and stage managers that perform in live theater. (Amended Complaint ("Am. Compl.") ¶ 1, DE [52].) Equity operates as the Individual Plaintiffs' labor union and is a party to the CBA. (Am. Compl. ¶ 17.)  Plaintiff Gateway is a New York corporation. (Am. Compl. ¶ 12.) Gateway is the Individual Plaintiffs' employer as well as a party to the CBA with Equity. (Am. Compl. ¶ 12.) Plaintiffs Annmarie Allan, Jeff Bellante, Scot Allan, and Michael Baker are employees of Gateway and members of the Union. (Am. Compl. ¶¶ 13-16.) The Funds are multi-employer

plans that receive contributions from various employers pursuant to those employers' collective bargaining agreements with Equity. (Am. Compl. ¶¶ 18-21.) The Trustees are the named fiduciaries, Plan Administrators, and Plan Sponsors of the Funds. (Am. Compl. ¶ 22.)

Simply stated, Plaintiffs allege either that Equity is the alter ego of the Funds (see Am. Compl. ¶ 23), or, that Equity acts as the Funds' agent in a principal-agent relationship. (Am. Compl. ¶ 36.)

Plaintiffs allege that Equity and the Funds are operated from the same address, 165-46th Street, New York, New York 10036. (Am. Compl. ¶ 24.) That they share and overlap of officers and board members as well as office space. (Am. Compl. ¶¶ 25-26.) Plaintiffs claims that Equity and the Funds share office equipment, including copy machines, telefax machines, and other items required for their day-to-day operations. (Am. Compl. ¶ 27.) Plaintiffs allege that Equity and the Funds act as a single entity and that the Funds dominate Equity and prevent equity from exercising its representative discretion. (Am. Compl. ¶¶ 28, 30.) Plaintiffs set forth that Equity is undercapitalized, and that Equity and the Funds are not treated as independent profit centers. (Am. Compl. ¶¶ 31-32.)

In the alternative, Plaintiffs allege Equity acts as the Funds agent in a principal-agent relationship and that Equity provides advice on behalf of the Funds as to how individuals should comply with the Funds' various contractual undertakings. (Am. Compl. ¶¶ 36-37.) Plaintiffs claim that the Funds benefit from Equity's actions. (Am. Compl. ¶ 38.) Plaintiffs allege upon information and belief that Equity has been appointed to act on the Funds behalf and acted with either apparent or actual authority in making representations regarding the Funds Defendants' plans and how to comply with them. (Am. Compl. ¶¶ 39-40.) Plaintiffs claim that the Fund

4

Defendants are therefore bound by the representations of their agent/alter ego, Equity. (Am. Compl. ¶ 41.)

        2.      <u>The Collective Bargaining Agreements and Individual Employment Agreements</u>

Through Letters of Agreement ("LOAs") executed by Gateway on April 20, 2015, (Am. Compl. ¶ 52; Ex. 2, ("2015 LOA"), DE [52-2]), and July 24, 2018, (Am. Compl. ¶ 52, Ex. 3 ("2018 LOA"), DE [52-3]), Gateway agreed to be bound by Equity's Agreement and Rules Governing Employment in Non-Resident Dramatic Stock ("C.O.S.T. Contract") (the "CBA"). (Am. Compl. ¶ 30; Ex. 1 (the "CBA"), DE [52-1].)

Pursuant to the CBA, Gateway is required to make weekly contributions to the Pension and Welfare Fund on behalf of its employees who are covered under the CBA, at a rate of 8% of all gross weekly salary earned per week per employee. (Am. Compl. ¶ 53; Ex. 2; Ex. 3.) Gateway is also required to make a weekly contribution to the Welfare Fund that ranged from $173 per week per employee in 2015 to $177 per week per employee in 2018. (Am. Compl. ¶ 54; Ex. 2; Ex. 3.) Further, pursuant to the LOAs, Gateway agreed to make salary deferrals as directed by its covered employees and remit the same to the 401(k) Plan. (Am. Compl. ¶ 56.)

The Welfare Fund provides health benefits to Actors who make $100 quarterly contributions and complete the requisite number of weeks of covered employment each year. (Am. Compl. ¶ 55.) To qualify for 6 months of coverage, Actors must have at least 11 weeks of covered employment in any 12 calendar months. (<u>Id.</u>) To qualify for 12 months of coverage, Actors must have 19 weeks of covered employment in any 12 calendar months. (<u>Id.</u>)

The CBA covers employees who are engaged in work as "Actors" as defined under the CBA. (Am. Compl. ¶ 58.)  Section 20(A) of the CBA and Section 7 of the LOAs define "Actor" broadly to include persons who are signed to the Equity Contracts, including principals, stage

managers, assistant stage managers, understudies, professional theater interns, supplemental extras, and extras. (Id.; Ex. 1; Ex. 2; Ex. 3.)  Prior to engaging in any performance, Gateway enters into individual employment contracts with each Actor called "Equity Contracts" that detail the terms of employment, including rate of pay, production schedules, and position.  (Am Compl. ¶ 57.)

Equity receives, reviews and/or accepts Equity Contracts for all Actors who have been employed by Gateway, including the Individual Plaintiffs. (Am. Compl. ¶ 60.)  Equity conducted yearly audits of all of Gateway's Equity Contracts for all Actors employed by Gateway. (Am. Compl. ¶ 61.) The audit process included a review of all Equity Contracts, related riders, box office reports, production programs and playbills, weekly reports, and salary records. (Am. Compl. ¶ 62.) If an issue arises during the audit process, Equity requests additional documentation from Gateway and potentially reconciliation with respect to such outstanding items. (Am. Compl. ¶ 63.) At no time during the yearly audits did Equity question the Equity Contracts of the Individual Plaintiffs. (Am. Compl. ¶¶ 64-66.)

### 3.   Termination of Benefits

Plaintiffs contend that since 1995 to present, Equity has represented to them that "on-call" or "standby" understudies or assistant stage managers are covered by the CBA. (Am. Compl. ¶¶ 68-69, 74.) In particular, Plaintiffs allege that in 1995 Gateway hired Jerry Lapidus ("Lapidus"), a former Equity employee, to work as a manager for Gateway. (Am. Compl. ¶ 70.) His duties consisted of hiring actors and drafting the actors' contracts pursuant to the governing CBAs ad Letter Agreements. (Am. Compl. ¶ 72.) Although Lapidus was hired for administrative work, he was assigned an Equity Contract as an on-call or standby assistant stage manager on various productions. (Am. Compl. ¶¶ 71-73.) For approximately three years, Equity received and

accepted union dues from Lapidus, and the Funds received and processed pension, health and 401(k) benefit contributions from Gateway on behalf of Lapidus without objection. (Am. Compl. ¶ 77.)

In or about 2013, Matthew Conti ("Conti"), the Equity business representative for Gateway at the time, told Gateway's Artistic Director, Paul Allen, that on-call/standby assistant stage managers to production were covered under the CBA. (Am. Compl. ¶ 80.) Conti never once stated that having assistant stage managers in an on-call/standby capacity was not covered by the CBA. (Id.) In late December 2013. Conti and his assistant, Jennifer Camp ("Camp"), attended a live performance at Gateway where several on-call/standby Actors were not present at the production because they were not needed. (Am. Compl. ¶ 81.) Neither Conti nor Camp voiced any objection or concern regarding their absence. (Id.) In June 2014, Conti also told Paul Allen that on-call or standby understudies would be guaranteed the rights, privileges, and benefits under the CBA. (Am. Compl. ¶ 82.)

Since 1995, Equity accepted Equity Contracts for all understudy and assistant stage manager positions from the Individual Plaintiffs. (Am. Compl. ¶ 89.) At no time were Gateway or any of its employees, including the Individual Plaintiffs, informed that on-call or standby roles were not covered by the CBA. (Id.) Further, the plain terms of the LOAs require weekly contributions to the Pension Find and Welfare Fund on behalf of all Actors on a per week, per Actor basis without regard to whether the Actor performed work that week. (Am. Compl. ¶ 90.) Therefore, Gateway continued to make contributions to Equity and to the Funds on behalf of the Individual Plaintiffs because of the understanding that the Individual Plaintiffs were engaged in covered work under the CBA and thus were entitled to pension, health, and 401(k) benefits from the Funds. (Am. Compl. ¶¶ 94-95.)

In late 2018 and early 2019, the Funds terminated the Individual Plaintiffs' benefits due to the determination that the Individual Plaintiffs had not performed work covered under the CBA. (Am. Compl. ¶¶ 99-100.) Specifically, on November 28, 2018, the Funds notified Annmarie Allan that it would terminate her pension, health and 401(k) benefits for period prior to and including 2017 and 2018. (Am. Compl. ¶ 99.) In terminating the coverage, Plaintiffs allege that the Funds wrongfully kept years of contributions made by both Gateway and Annmarie Allan to each benefit plan without remitting the expected benefits to Annmarie. (Id.)

On March 6, 2019, the Funds notified Gateway and Scot Allan, Michael Baker, and Jeff Bellante that it would no longer accept contributions on their behalf. (Am. Compl. ¶ 100.) The Funds also terminated Scot Allan's and Michael Baker's health benefits and removed certain pension credits from each of the Individual Plaintiffs. (Id.) Plaintiffs allege that by doing so, the Funds wrongfully kept years of contributions made by both Gateway and Scot Allan, Michael Baker, and Jeff Bellante. (Id.)

The Individual Plaintiffs appealed the Funds' determinations on or before May 3, 2019. (Am. Compl. ¶ 101.) On December 20, 2019, the Funds issued their final determination regarding Gateway and the Individual Plaintiffs. (Am. Compl. ¶ 103.) The Funds rejected most of the Individual Plaintiffs' appeals and determined that the Individual Plaintiffs were not entitled to certain pension, health, and 401(k) benefits and demanded the repayment of over $200,000 in medical costs paid because the Individual Plaintiffs were not Covered Employees. (Id.) The Funds determined that when the Individual Plaintiffs were employed as understudies and/or assistant stage managers, they were not engaged in covered employment. (Am. Compl. ¶ 104.)

Plaintiffs allege that not only did they lose years of contributions made to the Funds as a result of the misrepresentations and/or omissions, but that they are now also facing a demand from the Welfare Fund for $212,014.00, representing amounts paid by the Welfare Fund in health benefits for the Individual Plaintiffs from January 1, 2014, through December 20, 2019. (Am. Compl. ¶ 95.) Plaintiffs allege that while the Defendants allege that the contributions they received on behalf of the Individual Plaintiffs for the six years were improper, the Funds have declined to return the money. (Am. Compl. ¶¶ 96-97.)

B.     Procedural History

Plaintiffs commenced this action on June 5, 2020.  (See generally Compl., DE [1].) On August 11, 2020, both Equity and the Funds Defendants requested a pre-motion conference in anticipation of filing motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (See DE [20], [21].) On August 18, 2020, the Court granted Defendants' requests for a pre-motion conference. (See DE [24].) The pre- motion conference was held on September 10, 2020, and Defendants were granted leave to move to dismiss and a briefing scheduled was set. (See DE [28].) On October 26, 2020, Equity filed a motion to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) for failure to state a claim. (See DE [30].) On October 26, 2020, the Funds Defendants also filed their partial motion to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) for failure to state a claim. (See DE [31].)

On April 8, 2022, the Honorable Joanna Seybert referred the motions to the undersigned for Report and Recommendation. (See 04/08/2022 Order Referring Motions.) In a Report and Recommendation dated August 25, 2022, this Court recommended that Equity's motion to dismiss be granted and the Funds Defendants' motion for partial dismissal be granted in part and denied in part. (See DE [44].) Specifically, this Court recommended that: (1) the Funds

Defendants' motion to dismiss the Second Cause of Action (for alleged breach of fiduciary duty) be denied; (2) the Funds Defendants' motion to dismiss the Third and Fourth Causes of Action (for alleged failure to provide benefit statements in accordance with 29 U.S.C. § 1025(a)(1)(A)(i) & (B)) be denied; (3) the Funds Defendants' motion to partially dismiss the Fifth Cause of Action, to the extent that the Individual Plaintiffs seek to estop the Funds Defendants from collecting from Gateway be granted; (4) the Ninth Cause of Action for fraud alleged by Gateway be dismissed; (5) Gateway's Tenth Cause of Action be construed as a request for declaratory relief, not a separate cause of action; (6) the Individual Plaintiffs' claim of unjust enrichment be dismissed as preempted by ERISA; and (7) Gateway's unjust enrichment claim against the Trustees and the 401(k) Fund be dismissed, but survive as against the Pension and Health Funds. (Id.)

The Report and Recommendation was adopted in its entirety on September 30, 2022. (DE [50].) Plaintiffs were granted leave to replead claims not preempted by ERISA nor time barred. (Id.)

On November 4, 2022, Plaintiffs filed an Amended Complaint. (DE [52]). On November 22, 2022, the Funds Defendants requested a pre-motion conference in anticipation of filing a partial motion to dismiss the Amended Complaint. (DE [53].) On April 14, 2023, the Court waived its pre-motion conference requirement and granted the Funds Defendants' leave to move for partial dismissal of the Amended Complaint. (Order dated 04/14/2023.) On May 17, 2023. The Funds Defendants filed their partial motion to dismiss Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim. (See DE [56].) On October 26. 2023, the Honorable Joanna Seybert referred the motion to the undersigned for Report and Recommendation. (See 10/26/2023 Electronic Order Referring Motion.)

III.   The Motion to Dismiss

While the Amended Complaint sets forth seven causes of action, the Funds Defendants only seek dismissal of the Amended Complaint's Sixth Cause of Action, in which Gateway alleges common law fraud[1]. The Funds Defendants also move to strike Plaintiffs' jury demand.

The Funds Defendants assert that the Seventh Cause of Action in which Gateway alleges fraud against the Funds Defendants should be dismissed because Gateway fails to (1) plead fraud with the particularity required by Fed. R. Civ. P. 9(b), and (2) set forth non-conclusory factual allegations of fraudulent conduct. The Funds Defendants further argue that the alter ego theory (or agency theory) upon which Gateway relies is inapplicable, because Plaintiff offers no authority in support of its applications of the theory with regard to the relationship between a union and an employee benefit fund. Finally, the Funds Defendants contend that ERISA preempts the fraud claim.

The Funds Defendants also argue that Plaintiffs' demand for a jury trial should be stricken as Plaintiffs only seek equitable relief.

The Court now turns to the merits of the motion.

DISCUSSION

I.   Legal Principles: Standards Applicable on Motions to Dismiss

A.   Rule 12(b)(6)

---

[1] The Court notes that the Funds Defendants' motion initially also sought dismissal of the 401(k) Fund as a Defendant to the unjust enrichment claim in the Seventh Cause of Action. However, in their opposition, Plaintiffs clarify that the unjust enrichment claim is limited to between Gateway and the Pension Fund and Health Fund." (Pls.' Mem. of Law in Opp'n to the Funds Defs.' Partial Mot. To Dismiss and Mot. To Strike Pls.' Jury Demand ("Pls.' Br.") at 12.) Accordingly, that portion of the motion is now moot.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119–20 (2d Cir. 2010). Facial plausibility is established by pleading sufficient factual content to allow a court to reasonably infer the defendant's liability. Twombly, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 555. Nor is a pleading that offers nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," sufficient. Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 555).

With these standards in mind, the Court turns to assess the viability of Plaintiffs' fraud claim.

II.     Failure to State a Claim

    A.     Fraud (Sixth Cause of Action)

Plaintiffs asserts a cause of action for fraud against all Defendants, including the Funds Defendants.

        1.     Failure To Plead Fraud With Particularity

When reviewing a complaint for failure to plead fraud with particularity, plaintiff's allegations must be taken as true. See, e.g., Luce v. Edelstein, 802 F.2d 49, 52 (2d Cir. 1986). "The court must read the complaint generously and draw all inferences in favor of the pleader." Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).

Fed. R. Civ. P. 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Second Circuit has adopted a

strictly enforced pleading requirement under Rule 9(b). <u>See</u> <u>Wexner v. First Manhattan Co.</u>, 902 F.2d 169, 172 (2d Cir. 1990). The purpose of the pleading requirement is to give notice to defendants, to eliminate complaints filed only for discovery purposes, and to protect defendants' reputations from frivolous lawsuits. <u>See, e.g.</u>, <u>Cosmas v. Hassett</u>, 886 F.2d at 11.

An allegation of fraud must specify the time, place, speaker and content of the misrepresentation. <u>See</u> <u>Ouaknine v. MacFarlane</u>, 897 F.2d 75, 79 (2d Cir. 1990); <u>Cosmas v. Hassett</u>, 886 F.2d at 11; <u>Luce v. Edelstein</u>, 802 F.2d at 54. Any claim of fraud based on information and belief must include a statement of facts on which the belief is founded. <u>See</u> <u>Wexner v. First Manhattan Co.</u>, 902 F.2d at 172; <u>DiVittorio v. Equidyne Extractive Indus., Inc.</u>, 822 F.2d 1242, 1248 (2d Cir. 1987); <u>Luce v. Edelstein</u>, 802 F.2d at 54 n.1.

Generally, however, dates, times and places need not be pleaded with absolute precision, as long as enough information is disclosed to put the defendants on notice as to the circumstances of the charged misrepresentations. <u>Harris v. Wells</u>, 757 F. Supp. 171, 174 (D.Conn. 1991); <u>see</u> <u>Jubran v. Musikahn Corp.</u>, 673 F. Supp. 108, 112 (E.D.N.Y. 1987). "Plaintiff need not plead his evidence, so long as he gives defendants notice of what they are charged with." <u>Ballan v. Wilfred American Educational Corp.</u>, 720 F. Supp. 241, 252 (E.D.N.Y. 1989) (citing <u>Goldman v. Belden</u>, 754 F.2d 1059, 1070 (2d Cir. 1985)). Also, while the circumstances of fraud must be pled specifically, scienter may be averred generally when the complaint sets forth facts that give rise to a strong inference of fraudulent intent. <u>See</u> <u>Wexner v. First Manhattan Co.</u>, 902 F.2d at 172; <u>Ouaknine v. MacFarlane</u>, 897 F.2d at 80; <u>Cosmas v. Hassett</u>, 886 F.2d at 12–13.

Plaintiffs must connect the allegations of fraud to each individual defendant. <u>See, e.g.</u>, <u>Luce v. Edelstein</u>, 802 F.2d at 54. "General allegations that defendants 'conspired' in the

13

scheme do not sufficiently attribute responsibility for fraud to each individual defendant." Center Cadillac v. Bank Leumi Trust Co. of New York, 808 F. Supp. at 230 (citing Morin v. Trupin, 711 F. Supp. 97, 111 (S.D.N.Y. 1989)).

"[A] complaint must 'specify the time, place, speaker, and content of the alleged misrepresentations,' 'explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[s] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 359 (2d Cir. 2013) (quoting Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001)); see also Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006). The complaint must also "provide some minimal factual basis" that gives rise to a strong inference of fraudulent intent. Powers v. British Vita, P.L.C., 57 F.3d 176, 184 (2d Cir. 1995).

Gateway's fraud claim once again fails as against the Funds Defendants. As in the original complaint, Plaintiffs have not allege any facts demonstrating that any of the Funds Defendants knowingly made any material misrepresentations of fact with the intent to induce Plaintiffs' reliance thereon, as required to adequately set forth a claim of fraud. See Harley v. Guida, No. 19-cv-6152 (EK) (LB), 220 WL 4194196, *6 (E.D.N.Y. July 21, 2020) (finding fraud claim "frivolous because Plaintiff makes no allegations that she relied on any material misrepresentation by [defendant]").

Rather, the alleged misrepresentations Gateway attributes to the Funds Defendants are the misrepresentations made by Equity, a separate entity. See Maldonado v. Local 803 I.B. of T. Health and Welfare Fund, No. 09-CV-3598 (JG), 2010 WL 2787841, *2 (E.D.N.Y. July 12, 2010) (dismissing claim against health fund, stating "[union] and the Welfare Fund are . . . legally distinct entities; the Welfare Fund is a multiemployer employee benefit plan governed by

an equal number of employer-and-union-appointed trustees and maintain for the exclusive purpose of providing welfare and other benefits to employee participants"). Gateway further contends that the alleged factual allegations that "include specific statements attributed to the Funds Defendants" can be found at paragraph 80 of the Amended Complaint. (Pls.' Br. at 8.) However, paragraph 80 pertains to alleged representations by Equity representative Conti - not the Funds Defendants. (See Am. Compl. ¶ 80.)

While Plaintiffs have specified a time, speaker, and a misrepresentation, they have not identified one made by the Funds Defendants. Once again, the alleged misrepresentations rely on statements made by Conti, an Equity employee. Although, Plaintiffs allege that the Funds were aware of, or should have been aware of the misrepresentations made by Equity, through the overlapping directors and officers with Equity, the Amended Complaint is devoid of any misrepresentations made by the actual Funds Defendants. Thus, Plaintiffs have failed to adequately plead the elements of fraud against the Funds Defendants.

2. The Alter Ego and Agency Theories Are Inapplicable

Gateway asserts that Equity as "an agent and alter ego of the Funds" made misrepresentations concerning, inter alia, eligibility for benefits. (Am. Compl. ¶ 168.) Gateway alleges that the Funds Defendants are "bound by Actor[s'] Equity's misrepresentations." (Am. Compl. ¶ 171.)

a. The Alter Ego  Theory

To determine whether Plaintiffs adequately allege that Equity and the Funds defendants are alter egos, the Court must evaluate ten factors:

> (1) the absence of formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather then corporate

> purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

See New York State Elec. and Gas Corp. v. FirstEnergy Corp., 766 F.3d 212, 224 (2d Cir. 2014).

Not every factor need be satisfied to find domination. Id. at 225.

After considering the foregoing factors, the Court finds that Plaintiffs fail to adequately plead that Equity is an alter ego the Fund Defendants. The Amended Complaint alleges that Equity and the Funds share common personnel and office space. (Am. Compl. ¶¶ 24-27.) The Amended Complaint further alleges that the Funds do not maintain corporate formalities (Am. Compl. ¶ 33) and "[u]pon information and belief, Actor's Equity is undercapitalized." (Am. Compl. ¶ 31.) These alleged facts are insufficient to support an alter ego theory. Rather, Plaintiffs have made conclusory statements that the Court need not accept as true. See Bravado Int'l Grp. Merch. Serv., Inc. v. Ninna, Inc., No. CV-08-3123, 2009 WL 2707350, at *15 (E.D.N.Y. Aug.27, 2009). Vague and conclusory claims that the entities share office space and personnel, and that one entity is believed to be undercapitalized fail to adequately allege alter ego liability. See Sysco Food Serv of Metro N.Y., LLC v. Jekyll & Hyde, Inc., 2009 WL 4042758, at *3 (S.D.N.Y. 2009) (holding that a conclusory claim that "defendants intermingled their assets" was insufficient to support the existence of an alter ego relationship because it "fails to allege which corporation took funds from which").

b. Agency Theory

An agency relationship exists when a principal and agent (1) agree that the agent will act for the principal, and (2) both understand that the principal will control the agent in regards to the actions the agent takes on the principal's behalf. See, In re Parmalat Sec. Litia., 594 F. Supp. 2d 444, 451 (S.D.N.Y. 2009) ("In re Parmalat I"); Maung Ng We & Massive Atlantic Lmtd. v. Merrill Lynch & Co., No. 99 Civ. 9687, 2000 WL 1159835, *4 (S.D.N.Y. Aug.15, 2000). "To bind a principal, 'an agent must have authority, whether apparent, actual or implied.'" In re Parmalat I, 594 F. Supp. 2d at 451–52 (quoting Merrill Lynch Interfunding, Inc. v. Araenti, 155 F.3d 113, 122 (2d Cir. 1998)). Actual authority is created by "'written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account.'" Nuevo Mundo, 2004 WL 112948, *4 (quoting Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd., 909 F.2d 698, 702 (2d Cir. 1990)). Control is an "essential characteristic of the principal-agent relationship." In re Parmalat I, 594 F. Supp. 2d at 451.

Drawing all inferences in the Plaintiffs' favor, the Court concludes that they have failed to make sufficient allegations of agency to survive the motion to dismiss stage. Plaintiffs seek to hold the Funds Defendants vicariously liable for alleged misrepresentations pursuant to the theory that Equity was the Funds agent. This theory is based upon the allegation that "[u]pon information and belief, Actor's Equity has been appointed to act on the Funds behalf." (Am. Compl. ¶ 39.) However, Plaintiffs have not alleged any facts from which the Court could infer that such a relationship exists. Accordingly, the allegations are insufficient to support their fraud claims against the Fund Defendants on an agency theory.

   3.   The Fraud Claim is Preempted by ERISA

The Funds Defendants aver that even if properly pled, the fraud claim should be dismissed because it is preempted by ERISA. As Gateway did not address the argument in its opposition, Gateway has conceded its validity. See Gustavia Home, LLC v. Hoyer, 362 F. Supp. 3d 71, 86 (E.D.N.Y. 2019) ("a party concedes through silence arguments made by its opponent that it fails to address"); CVS Pharmacy, Inc. v. Press America, Inc., 377 F. Supp. 3d 359, 383 (S.D.N.Y. 2019) ("a party may be deemed to have conceded an argument by failing to address it in its briefing").

For the foregoing reasons, Plaintiffs' fraud claim against the Funds Defendants fails meet the heightened pleading requirements of Rule 9(b). Further, Gateway fails to attribute any fraudulent misrepresentations or omissions to the Funds Defendants and fails to link any alleged fraudulent misrepresentations to them by way of the either an alter ego or agency theory. As such, it is respectfully recommended that the Funds Defendants' partial motion to dismiss be granted and that the Sixth Cause of Action for Fraud be dismissed.

III.   Motion to Strike Plaintiffs' Jury Demand

The Amended Complaint sets forth seven causes of action, five of which are brought pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., as well as one cause of action for unjust enrichment and one, as already mentioned, for fraud. The Funds Defendants move to strike Plaintiffs' jury demand because they argue the only relief sought by Plaintiffs is equitable in nature.

The Seventh Amendment, which determines whether the parties are entitled to a jury trial, provides that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." Consequently, a plaintiff is entitled to a jury if his claims "involve rights and remedies of the sort traditionally enforced in an action at law,

rather than in an action in equity." <u>S.E.C. v. Commonwealth Chem. Secs., Inc.</u>, 574 F.2d 90, 95 (2d Cir. 1978). However, if the relief he seeks is equitable in nature, a jury trial is not warranted. See <u>Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry</u>, 494 U.S. 558, 565 (1990).

It is well settled that there is "no right to a jury trial in a suit brought to recover ERISA benefits." <u>O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.</u>, 642 F.3d 110, 116 (2d Cir. 2011); <u>see</u> <u>also</u> <u>Muller v. First Unum Life Ins. Co.</u>, 341 F.3d 119, 124 (2d Cir. 2003) ("[T]here is no right to a jury trial under ERISA."). However, the law surrounding jury trials in ERISA cases is complex. See <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204, 213 (2002) ("The kind of restitution that petitioners seek, therefore, is not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred upon respondents."); <u>Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.</u>, No. 3:11-CV-282 (JCH), 2012 WL 162361, at *5 (D. Conn. Jan. 19, 2012) ("<u>Great-West</u> reconfigured the legal landscape of restitution, and has been interpreted to permit jury trials on ERISA claims when such claims are legal rather than equitable in nature." (quotations and citation omitted)).

With respect to Plaintiffs' surviving causes of actions, Plaintiffs are not entitled to a jury based on their claim for unjust enrichment. Unjust enrichment is an equitable doctrine that provides for recovery when (1) there is a benefit conferred upon the defendant by the plaintiff; (2) the defendant is aware of the benefit; and (3) the defendant accepts the benefit under such circumstances as to make it inequitable for him to retain the benefit without payment of its value. <u>Van Gemert v. Boeing Co.</u>, 590 F.2d 433, 444 (2d Cir. 1987). "Restitution is the traditional remedy employed for unjust enrichment claims." <u>Webb v. RLR Assoc., Ltd.</u>, No. 03 Civ. 4275

(HB), 2004 WL 555699, at *3 (S.D.N.Y. Mar. 19, 2004) (citation omitted). Therefore, Plaintiffs claim for unjust enrichment does not entitle them to a jury trial.

Plaintiffs' Second Cause of Action, brought under ERISA § 404(a), 29 U.S.C. § 1104(a), alleges that the Trustees violated their fiduciary duty under ERISA by "misrepresent[ing]" to the Individual Plaintiffs that they were entitled to benefits from the Funds. (See Am. Compl. ¶ 140.) While ERISA does not expressly permit or require that claims brought for a breach of the fiduciary duties outlined in section 404(a) be tried to a jury, the Court acknowledges that there is a split among district courts within this Circuit on whether a claim for compensatory damages for breach of fiduciary duty requires the empanelment of a jury. However, because at this juncture, it is unclear what, if any claims, will proceed to trial, the Court need not yet decide this issue. The Funds Defendants have not identified any prejudice that would result from allowing the jury demand to remain at this stage of the litigation. See Taupita Inv., Ltd. v. Benny Ping Wing Leung, No. 14 Civ. 9739 (PAE), 2017 WL 3600422, at *13 (S.D.N.Y. Aug. 17, 2017) ("[T]his issue is better resolved following discovery and resolution of any motions for summary judgment.... The Court accordingly denies the motion to strike plaintiffs' jury demand without prejudice[.]") Therefore, given the complex nature of the issue and the lack of prejudice to Defendants, the Court recommends declining to resolve the motion to strike at this juncture, and instead recommends denying the Funds Defendants' motion without prejudice.

<u>CONCLUSION</u>

For the foregoing reasons, this Court respectfully recommends the Funds Defendants' motion for partial dismissal and motion to strike Plaintiffs' jury demand, found at docket entry No. 56 herein, be granted in part and denied in part. Specifically, this Court recommends that the

motion be granted to the extent that Plaintiffs' Sixth Cause of Action for Fraud be dismissed, and denied without prejudice to renewal with respect to the motion to strike Plaintiffs' jury demand.

<u>OBJECTIONS</u>

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. <u>Thomas v. Arn</u>, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York
        February 28, 2024

                                             /s/ Anne Y. Shields
                                             Anne Y. Shields
                                             United States Magistrate Judge